IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**THAD EVERETT DELAUGHTER**                                              **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO. 1:14-cv-18-RHWR**

**MICHAEL HATTEN,**
**GLORIA PERRY, and**
**DONALD FAUCETT**                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER GRANTING PROSPECTIVE INJUNCTIVE RELIEF

BEFORE THE COURT is Plaintiff Thad Everett Delaughter's claim for prospective injunctive relief to obtain total hip revision surgery. A unanimous jury awarded Delaughter $382,000.00 in compensatory damages, finding that former Chief Medical Officer of the Mississippi Department of Corrections ("MDOC") Office of Medical Compliance, Dr. Gloria Perry, in her individual capacity, was deliberately indifferent to Delaughter's serious medical needs in violation of the Eighth Amendment. By the time of trial, Dr. Perry had been succeeded as Chief Medical Officer by Dr. Donald Faucett, who was automatically substituted as the official capacity Defendant. The Court concludes that Delaughter is entitled to prospective injunctive relief against Dr. Faucett, in his official capacity.

### I. PROCEDURAL HISTORY

In 2006, Delaughter began serving a 25-year prison sentence in MDOC custody. He has been incarcerated exclusively at facilities operated by MDOC since that time, and his tentative release date is January 2031. Delaughter has suffered from severe

1

rheumatoid arthritis since he was two years old. Before his incarceration, he received a bilateral hip replacement and a bilateral knee replacement due to rheumatoid arthritis. In 2010, Delaughter began submitting sick call requests, asking to see a doctor about his left prosthetic hip because he was in severe pain. Delaughter was treated with pain medication and steroid injections. Delaughter was referred to Dr. Elliot Nipper, an orthopedic specialist, because MDOC is not staffed or equipped to provide the specialty treatment Delaughter requires.

In July 2011, Dr. Nipper found that the acetabular component of Delaughter's left hip had failed. At a follow-up appointment in September 2011, Dr. Nipper discussed the possibility of surgery with Delaughter and warned him about the severity and complexity of the reconstructive surgery he needed. Dr. Nipper noted that Delaughter smoked cigarettes, which greatly increased his complication rate for surgery. Delaughter consented to surgery and surgery was scheduled for October 2011. Because of the extensive bone loss around Delaughter's left hip, Dr. Nipper required a model of Delaughter's pelvis be constructed using 3D printing, which would allow him to look at the deformity and order customized artificial hip components.

The surgery scheduled for October 2011 was canceled and never rescheduled. Four years later, after still not receiving surgery, Delaughter filed suit *pro se* in January 2014, alleging a violation of his Eighth Amendment rights against a variety of Defendants. All parties consented to proceed before a Magistrate Judge to conduct all proceedings and to order the entry of a final judgment. Delaughter voluntarily

dismissed Wexford Health Services, Christopher Epps, and Johnny Denmark, leaving as Defendants the State of Mississippi, Michael Hatten, medical administrator at South Mississippi Correctional Institution, and Dr. Woodall, who works for Wexford Health Services. Delaughter requested appointment of counsel on two occasions, and the requests were denied.

The State of Mississippi, Hatten, and Dr. Woodall filed Motions for Summary Judgment that were granted by United States Magistrate Judge John C. Gargiulo, and the case dismissed. Mem. Op. and Order [124]. Delaughter appealed the dismissal of the claims against Hatten and Dr. Woodall, in their individual and official capacities, and did not appeal the dismissal of the State of Mississippi.

The United States Court of Appeals for the Fifth Circuit affirmed the grant of summary judgment to Dr. Woodall and reversed the grant of summary judgment to Hatten. *Delaughter v. Woodall*, 909 F.3d 130, 136-137 (5th Cir. 2018). The Fifth Circuit remanded Delaughter's claim for prospective injunctive relief against Hatten because the district court failed to consider the *Ex Parte Young* exception to sovereign immunity. *Id*. at 137 (citing *Ex parte Young*, 209 U.S. 123 (1908)). The Fifth Circuit found that summary judgment should not have been granted to Hatten, in his individual capacity, because genuine issues of material fact precluded a finding regarding deliberate indifference. *Id*. at 139-40. The Fifth Circuit directed this Court to reconsider appointing counsel to Delaughter. *Id*. at 140-41.

On remand, the Court appointed counsel for Delaughter. Order [156]. Delaughter filed an amended complaint, naming Hatten and Dr. Perry. *See* Am.

3

Compl. [162]. Hatten and Dr. Perry filed a joint Motion for Summary Judgment [179]. Judge Gargiulo denied the Motion and set the matter for a jury trial. The case was reassigned after Judge Gargiulo's passing and a two-day jury trial held before the undersigned. The jury found that Dr. Perry was deliberately indifferent to Delaughter's serious medical needs, resulting in substantial harm to him, but Hatten was not deliberately indifferent. Verdict [230]. The jury awarded Delaughter $382,000.00 in compensatory damages against Dr. Perry, in her individual capacity, and did not award punitive damages. *Id.* at 2.

The Court must now determine whether Delaughter is entitled to prospective injunctive relief against Dr. Perry's successor, Dr. Faucett. While Delaughter's prospective injunctive relief claim is now against Dr. Faucett by operation of law, *see See* Fed. R. Civ. P. 25(d), Dr. Perry was the Chief Medical Officer until 2020.

## II. **ANALYSIS**

### A. The *Ex parte Young* Exception to Sovereign Immunity Applies to Dr. Faucett

The United States Supreme Court carved out a narrow exception to Eleventh Amendment sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908). "The *Young* exception is a legal fiction that allows private parties to bring 'suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)). "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the

4

[challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* (citing *Young*, 209 U.S. at 157).

Dr. Faucett argues that he is not subject to the *Young* exception because he cannot compel a surgeon to even see Delaughter, much less perform surgery. [238] at 25. According to Dr. Faucett, the evidence at trial showed that

> the only reason Delaughter has yet to receive surgery is because orthopedic specialists are unwilling to operate on him due to the severity of his condition, the complexity of his case, and his status as a prisoner. There are gaps in time where Plaintiff was not seen by a specialist because the specialists contacted by OMC would not provide appointments, would not follow up on OMC's requests, or would wait lengths of time before making a referral – not because OMC did not try to arrange for Plaintiff to see a specialist.
>
> Although Defendants are aware of the risk to Delaughter's health, and they concede that he suffers from a serious and painful condition, there is no evidence whatsoever that they acted with deliberate indifference to that risk by denying or delaying Delaughter's hip surgery or related treatment.

*Id.* at 17.

*Young* provides that "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact[.]" *Young*, 209 U.S. at 157. MDOC's Chief Medical Officer is responsible for requesting, coordinating, and approving treatment for inmates by outside medical specialists. Dr. Faucett is the link between Delaughter and outside specialists. Dr. Faucett has "some connection" and authority to compel the provision of surgery

5

because he is the one responsible for finding a willing surgeon and coordinating treatment. The *Young* exception applies to Dr. Faucett.

## B.     There is an Ongoing Constitutional Violation

The Prison Litigation Reform Act ("PLRA") establishes standards for the entry and termination of prospective relief in civil actions challenging prisoner conditions. The PLRA requires the Court to make a finding of an ongoing constitutional violation, which is a mixed question of law and fact. *Brown v. Collier*, 929 F.3d 218, 228 (5th Cir. 2019).

The Eighth Amendment safeguards a prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The government is obligated to provide prisoners "with a health care system which meets minimal standards of adequacy." *Id.* at 116 n. 13. Prison officials must respond reasonably to a prisoner's medical needs. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety, may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

No one disputes that total hip revision surgery is medically necessary. No one disputes that Delaughter was offered and consented to surgery in 2011. It is not clear why Dr. Nipper canceled surgery in October 2011. Dr. Perry testified that she reached out to Dr. Nipper promptly after he canceled surgery in October 2011 to inquire about

rescheduling, but she made no record. There is some circumstantial evidence that the surgery was not performed because it was cost prohibitive to MDOC, and there is other evidence indicating that Dr. Nipper canceled the surgery after receiving pushback from his own practice. Regardless of the reason, Delaughter did not see Dr. Nipper, or any other surgeon, until over two years later in September 2013.

At a September 2013 follow-up visit, Dr. Nipper referred Delaughter to the University of Mississippi Medical Center ("UMMC"). Delaughter's referral to UMMC was not approved until July 2014, ten months later, and he did not see a surgeon at UMMC until March 8, 2016, when he saw Dr. Adam Ryan Smith. [183] at 14-15, 94-97. Dr. Smith noted that Delaughter's pain had gotten progressively worse, and his left hip now had a fracture. This fracture was not present in x-rays taken in 2010 and 2011. Dr. Perry admitted that Delaughter saw no surgeons during 2014.

Dr. Smith ordered labs to check Delaughter for infection, and indicated that if Delaughter was not infected, he would perform a single-stage revision surgery on Delaughter's left hip. Delaughter's lab results were negative for infection, and he saw Dr. Smith again on April 5, 2016, where he consented to proceeding with surgery. Dr. Smith discussed with Delaughter the need for him to be drug and nicotine free prior to surgery. Delaughter admitted to recently smoking marijuana. Dr. Smith ordered Delaughter to return in two months to be drug tested. Delaughter never saw Dr. Smith again. The reasons why are unclear. Dr. Perry testified that Dr. Smith refused to set up an appointment, but she made no written record of this refusal. [236] at 100. She faults Delaughter's marijuana use for Dr. Smith's refusal to follow through with

7

surgery, but the jury did not find that evidence compelling, and neither does the Court.

Nine months after Delaughter's visit to Dr. Smith, Delaughter was taken back to UMMC and seen by Dr. Patrick Peavy. Dr. Peavy's office notes from the January 5, 2017, indicate that Dr. Peavy discussed the complexity and risks of the needed surgery, and believed Delaughter would not receive ideal postoperative care in prison. Dr. Peavy did not schedule surgery and noted that Delaughter wanted to wait until he was released from MDOC before having surgery. Delaughter's testimony that he did not tell Dr. Peavey that he wanted to wait until he was released to have surgery is credible because Delaughter's tentative release date is January 2031.

While this case was on appeal, the Fifth Circuit entered an order in July 2018 appointing appellate counsel for Delaughter and noting that "out of state options for performing the surgery have yet to be pursued." [146] at 2. At that point, which was eight years after Dr. Nipper prescribed surgery, Dr. Perry and her office began pursuing out of state options. While Dr. Faucett emphasizes that the Chief Medical Officer has contacted 20 orthopedic physicians since 2011, fifteen of those physicians were contacted after July 2018. This does not establish, as Defendant argues, that the Chief Medical Officer went well beyond reasonable measures to obtain surgery for Delaughter. It instead reveals that Delaughter's surgery was not diligently pursued until after the Fifth Circuit emphasized the Chief Medical Officer's failure to pursue out of state options. The number of surgeons contacted is less meaningful when a closer look reveals that "contacts" with surgeons often included nothing more

8

than a phone call to physician that was not returned, or a letter to a physician who did not respond to the letter.

On August 28, 2018, Delaughter saw Dr. Sameer Naraje at the University of Alabama-Birmingham Medical Center. Dr. Naraje scheduled surgery for October 1, 2018, but he then reviewed Delaughter's medical records which he believed showed that surgery was already scheduled at UMMC. Dr. Naraje canceled surgery. Dr. Naraje was mistaken that Dr. Smith had scheduled surgery, but the Chief Medical Officer did not attempt to contact Dr. Naraje to explain the error. This is a very clear example of Dr. Perry's reckless and wanton disregard for Delaughter's increasingly serious medical needs.

In the roughly two years since Dr. Faucett has taken over as MDOC's Chief Medical Officer after Dr. Perry's departure, Delaughter has still not had total hip revision. A constitutional violation will continue until Delaughter's total hip revision surgery is completed.

## C.  Delaughter is Entitled to Prospective Injunctive Relief

In *Farmer v. Brennan*, the Supreme Court provided that the courts may grant appropriate injunctive relief where a prisoner proves the required elements of his deliberate indifference claim. 511 U.S. at 846-47. A unanimous jury determined that Delaughter had proven deliberate indifference by Dr. Perry, and the Court agrees with that determination.

A party seeking injunctive relief must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Ball v. LeBlanc*, 988 F.Supp.2d 639, 687 (M.D. La. 2013), *aff'd in part, vacated in part, remanded*, 792 F.3d 584 (5th Cir. 2015) (citing *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).

The PLRA restricts prisoner's ability to obtain an injunction and keep it in effect. Under the PLRA, courts may not enter prospective relief

> unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626.

Delaughter has suffered irreparable injury from the delay because his condition has progressively worsened, making surgery more complex, and a willing surgeon harder to find. An award of damages does not adequately protect him from the health risks associated with further delay in medically-necessary surgery. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992). A remedy in equity is warranted, considering the balance of hardships between Delaughter and Dr. Faucett. And it is

beyond dispute that an injunction enforcing an individual's constitutional right to be free from cruel and unusual punishment serves the public interest.

The Court finds that injunctive comports with the PLRA's requirements. The injunction is narrowly tailored to direct Dr. Faucett to obtain and arrange for the surgery that Delaughter requires. The scope of this remedy extends no further than necessary to obtain total hip revision for one prisoner, Delaughter, who undisputedly needs total hip revision. And the injunction is fashioned in the least intrusive means possible to remedy the violation of Delaughter's Eighth Amendment rights. There is no argument that injunctive relief will adversely affect the public or operation of the criminal justice system.

In fashioning this prospective injunctive relief, the Court was influenced by the Chief Medical Officer's position that "the evidence presented at trial shows that Defendants have gone well beyond reasonable measures to abate Delaughter's hip issues." [238] at 17. In fact, the evidence at trial showed the passage of multiple years where Delaughter saw no surgeon at all, a lack of pursuit of out-of-state options for the first eight years, and unclear and undocumented reasons for why surgery was cancelled.

The Court find that there is a clear threat of a continuing constitutional violation that can be inferred from the pattern of delay and gaps in treatment since 2011, coupled with the continued delay following trial. The Court was informally informed through a March 28, 2022 email from defense counsel that it is "our understanding that the first stage of Mr. Delaughter's right hip revision surgery has been

11

completed." Defense counsel does not know "the surgeon's plan for completion of the right hip and a timeline for the left hip." The Court has not been told who performed the surgery. While progress towards total hip revision is encouraging, the Court finds that progress will wane unless prospective injunctive relief is ordered.

Having found that the delay in surgery constitutes cruel and unusual punishment, in violation of the Eighth Amendment, the Court grants Delaughter's request for prospective injunctive relief and directs the following remedial actions:

1. Dr. Faucett must obtain and coordinate Delaughter's total hip revision. He may use his professional discretion to determine how that can be accomplished but must expand his efforts to find a qualified and willing surgeon if one has not yet been found.

2. Dr. Faucett must ensure that his office keeps detailed records of any action taken to obtain and coordinate Delaughter's total hip revision and present them to the Court every three weeks, unless otherwise excused, until Delaughter's total hip revision and post-surgical treatment is completed.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that Delaughter's request for prospective injunctive relief is **GRANTED**. Dr. Faucett will ensure that his office keeps detailed records of any action taken to obtain and coordinate Delaughter's total hip revision and will present them to the Court every three weeks,

unless otherwise excused, until Delaughter's total hip revision and post-surgical treatment is completed.

**SO ORDERED** this the 31st day of March 2022.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE