**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**THAD EVERETT DELAUGHTER**                                                                  **PLAINTIFF**

**v.**                                                                                                    **Civil No. 1:14-cv-18-RHWR**

**MICHAEL HATTEN,**
**GLORIA PERRY, and**
**DONALD FAUCETT**                                                                          **DEFENDANTS**

---

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION [248] FOR ATTORNEY FEES AND NONTAXABLE EXPENSES

BEFORE THE COURT is the Motion [248] for Attorney Fees and Nontaxable Expenses filed by Plaintiff Thad Everett Delaughter. This Motion has been fully briefed. Having considered the parties submissions, the record in this case, and relevant legal authority, the Court finds that Plaintiff's Motion [248] should be granted in part and denied in part. Pursuant to 42 U.S.C. § 1988(b), Plaintiff is entitled to reasonable attorney fees in the amount of $98, 728.95 and expenses in the amount of $898.10, for a total award of $99,627.05. Pursuant to 42 U.S.C. § 1997e(d)(2), $95,500.00 of that amount must be paid from the compensatory damages award. Defendant Gloria Perry must pay Plaintiff the remaining $4,127.05.

## I. BACKGROUND

A detailed factual and procedural background may be found in the other Memorandum Opinion and Order [271] entered this day.

## II. LEGAL STANDARD

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses...." *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 550 (2010). However, in civil rights actions, such as this one, courts have the discretion "to allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 1988(b).

To attain prevailing party status, a party must achieve some judicially sanctioned relief that either creates or materially alters a legal relationship between the parties. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001). Following *Buckhannon*, the Fifth Circuit established three requirements that must be satisfied for a plaintiff to demonstrate prevailing party status: (1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered. *See Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008).

Following Fifth Circuit precedent, trial courts employ a two-step process when determining an award of attorney's fees. *Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cty.*, 197 F.3d 173, 192 (5th Cir. 1999)). First, courts calculate the lodestar "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

In evaluating the reasonableness of the number of hours expended, courts determine "whether the total hours claimed are reasonable [and] also whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 932 (5th Cir. 1990), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990)). Any duplicative, excessive, or inadequately documented time should be excluded from the lodestar calculation. *Jimenez*, 621 F.3d at 379-80. The appropriate hourly rate is based on the prevailing community standards for attorneys of similar experience in similar cases. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). The burden is on the applicant to establish the reasonableness of the award. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co.*, 50 F.3d at 324; *In re Smith*, 966 F.2d 973, 978 (5th Cir. 1992)).

Next, courts consider whether to adjust the award based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Jimenez*, 621 F.3d at 380. If a court chooses to adjust the award, it must "articulate and clearly apply the *Johnson* criteria." *See Dodge v. Hunt Petroleum Corp.*, 174 F. Supp. 2d 505, 508 (N.D. Tx. 2001); *see also Jimenez*, 621 F.3d at 380 (quoting *Perdue*, 559 U.S. at 558) (noting district courts must provide "a reasonably specific explanation for all aspects of a fee determination.").

The Prison Litigation Reform Act ("PLRA") imposes four additional limitations on attorney fee awards. First, all fees must have been "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. §

1997e(d)(1)(A). Second, the fees must be either "proportionally related to the court ordered relief" or "directly and reasonably incurred in enforcing the relief ordered." § 1997e(d)(1)(B). Third, the fees cannot be predicated upon hourly rates which exceed "150 percent of the hourly rate established" by 18 U.S.C.A. § 3006A, known as the Criminal Justice Act ("CJA"). § 1997e(d)(3). Finally, the PLRA requires that twenty five percent of the judgment be applies "to satisfy the amount of attorney's fees awarded against the defendant." § 1997e(d)(2).

## III. DISCUSSION

The resolution of this motion requires four inquires. First, the Court must determine whether Plaintiff has attained prevailing party status. Next, the Court must determine the reasonableness of the requested attorney fees using the lodestar calculation. After that, the Court must determine whether an upward or downward variance of the lodestar is warranted. Finally, the Court must determine whether the award complies with the additional limitations imposed by the PLRA. The Court addresses each in turn.

### A.    Prevailing Party Status

To attain prevailing party status, "a plaintiff must (1) obtain actual relief, such as an enforceable judgment or consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Dearmore*, 519 F.3d at 521 (quotation marks and citation omitted).

Upon review, the Court finds that Plaintiff has attained prevailing party status. First, the jury's compensatory damages award and the Court's grant of

4

prospective injunctive relief both constitute "actual relief." *Id*. Second, the damages award alone materially altered the legal relationship between Plaintiff and Defendant. *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("material alteration" results when there is a "judgment for damages in any amount, whether compensatory or nominal," because even a nominal award "forc[es] the defendant to pay an amount he otherwise would not pay."). Finally, by their nature both forms of actual relief awarded "modifie[d] the defendant's behavior" in a way that "directly benefitted plaintiffs at the time of its entry." *Dearmore*, 519 F.3d at 521. Therefore, Plaintiff has attained prevailing party status.[1]

## B.   Lodestar Inputs

To calculate the lodestar, the Court multiplies the reasonable number of hours expended and the reasonable hourly rate. *See Jimenez*, 621 F.3d at 379-80; *Dodge*, F. Supp. 2d at 508. The Court begins its analysis by addressing the reasonableness of the hourly rates Plaintiff claimed.

### a.  Reasonable Hourly Rate

The general rule is that "'reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClaim*, 649 F.3d at 381 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Plaintiff bears the burden of "produc[ing] satisfactory evidence . . . that the requested rates are in line

---

[1] Under *Farrar*, it appears the compensatory damages award alone confers prevailing party status. *See* 506 U.S. at 113 (holding that a civil rights plaintiff who recovers damages in any amount, whether compensatory or nominal, qualifies as "prevailing party"); *see also Grisham v. City of Fort Worth*, 837 F.3d 564, 568 (5th Cir. 2016) (noting that even an award of nominal damages is sufficient to confer prevailing party status).

with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11).

Usually, "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits'" – here, the Southern Division of the Southern District of Mississippi – and the reasonable hourly rate for that community "is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998)). Courts also look to other court decisions regarding the prevailing rate. *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 660 (5th Cir. 1996) (affirming prevailing rate arrived at by district court using "the hourly rate on awards by other judges in the [division,] previous awards in the . . . case, and the published billing rates of outside counsel.").

In this case, Plaintiff was represented by attorneys Christopher Smith and Morgan Holder. Mr. Smith has over twelve years of experience practicing civil and criminal law. Ex. [248-2] at 1. Prior to entering private practice, Mr. Smith spent three years as an Assistant State Attorney for the Fourteenth Judicial District of Florida prosecuting state felony offenses. *Id.* at 4. Mr. Holder has a decade of civil litigation experience. Ex. [248-3] at 1. In 2014, the pair formed Smith & Holder, PLLC. Ex. [248-2] at 4. Their practice focuses on personal injury cases and criminal defense.

Plaintiff requests a rate of $237.00 per hour for both attorneys, which is less than their normal per hour rate of $250.00. Mem. [249] at 5. Defendant objects that Plaintiff failed to submit affidavits from other local attorneys or cite any cases from this district establishing the reasonableness of the requested rate. Mem. [263] at 12. In response, Plaintiff directs the Court's attention to five cases in this district where courts awarded attorney fees ranging from $225.00 to $400.00 per hour. *See* Mem. [266] at 2-3. Plaintiff also directs the Court's attention to the declaration of now-Judge S. Trent Farve, relied on by another judge in this district to determine the reasonable local market rate. *See Lamar Company, LLC v. Harrison Cnty. Sch. Dist.*, Civ. No. 1:17-cv-206, 2017 WL 6452774, at *2 (S.D. Miss. Dec. 18, 2017). The declaration states that $250.00 an hour is "consistent with hourly rates charged by experienced attorneys . . . in the Mississippi Gulf Coast area." Ex. [266-1] at 1.

Here, the Court finds that the requested rate of $237.00 per hour is reasonable. While affidavits from local attorneys indicating a familiarity with the submitting counsel and attesting to the reasonableness of their requested rate are generally preferred, Fifth Circuit precedent does not explicitly impose such a requirement. Instead, as noted above, Fifth Circuit precedent provides that "[g]enerally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368. Here, the declaration provided came from a local attorney and stated that $250.00 is a reasonable hourly rate for experienced attorneys in this community. Thus, the declaration is sufficient to support a reasonably hourly rate of $237.00.

The Court also finds that previous cases in this district support that determination. *See, e.g., Walker*, 99 F.3d at 660 (affirming prevailing rate arrived at by district court using "the hourly rate on awards by other judges in the [division,] previous awards in the . . . case, and the published billing rates of outside counsel."). In *Lamar Company*, Judge Guirola cited a litany of cases in this district supporting an hourly rate between $225.00 and $400.00. 2017 WL 6452774, at *2. For example, Judge Guirola cited *United States ex rel. Rigsby v. State Farm Fire & Casualty Company*, in which the court awarded attorney Laura K. Barbour, who had only been admitted to practice in 2010, an hourly rate of $262.00. Civ. No. 1:06-cv-433, 2014 WL 691500, at *17 (S.D. Miss. Feb. 21, 2014). The court found that rate "commensurate with her experience and [ ] reasonable under the circumstances of this particular case." *Id.* Importantly, one of those circumstances was evidence presented "that the average rate in this community for a junior partner is $262.00." *Id.*

The Court has also considered other decisions such as *Brown v. Mississippi Department of Health*, an employment discrimination case that resulted in a favorable jury verdict, in which the court awarded an attorney with approximately nine years in practice at the time, an hourly rate of $235.00. Civ. No. 3:11-cv-146, 2013 WL 12128785, at *4 (S.D. Miss. Mar. 5, 2013). Given that Mr. Smith and Mr. Holder have more experience in the practice of law than both of the aforementioned attorneys, the cases in this district also support the determination that the requested rate of $237.00 per hour is reasonable.

8

The Court further notes that Defendant does not actually contest the reasonableness of the requested rate. Defendant's objections focus solely on the absence of a local attorney declaration or case law to support the requested rate. Plaintiff has now provided both. And the party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified. *La. Power & Light Co.*, 50 F.3d at 325. Defendant has not carried this burden.

Based on the foregoing, the Court finds that the requested rate of $237.00 per hour is reasonable. Because this rate also comports with the additional limitations imposed under the PLRA, *see* discussion *infra* Section III.E, the Court will apply it in the lodestar calculation.

### b.  Reasonable Number of Hours

Next, the Court analyzes the reasonableness of the number of hours expended in this case. To calculate the reasonable number of hours expended, the Court must determine whether the total hours claimed are reasonable and if the particular hours claimed were reasonably expended. *See League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (citing *La. Power & Light Co.*, 50 F.3d at 324; *Alberti*, 896 F.2d at 933-34). The applicant bears the burden of establishing a reasonable number of hours expended and proving that billing judgment was exercised. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).

The exercise of billing judgment generally "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker*, 99 F.3d at

769. This burden is met by producing "billing records ... that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. But, "[a] district court cannot inquire into the reasonableness of every action taken and every hour expended by counsel." *Illinois Cent. R. Co. v. Harried*, Civ. No. 5:06-cv-160, 2011 WL 283925, at *10 (S.D. Miss. Jan. 25, 2011) (citation omitted). The Court is mindful, though, that its "goal ... is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, Defendant argues that the Court should reduce the number of compensable hours for a variety of reasons. Mem. [263] at 6-11. The Court addresses each in turn.

### i.   *Lack of Billing Judgment*

First, Defendant contends that Plaintiff's attorneys did not exercise billing judgment. Mem. [263] at 9. This argument lacks merit. Both attorneys filed declarations with the Court stating that they had excluded "numerous hours" spent by their staff "assisting in the litigation and trial, including reviewing documents, preparing correspondence, preparing exhibit and trial notebooks, and phone calls with [Plaintiff]." Ex. [248-2] at 2; Ex. [248-3] at 2. A review of the original and renewed billing statement establishes that, in fact, no staff work has been included. *See* Ex. [248-1] at 1-16; *see also* [266-2] at 1-16. In the Court's view, this reflects the exercise of billing judgment, given that courts in this district permit the inclusion of non-attorney work in the lodestar calculation. *See Depriest v. Walnut Grove Corr. Auth.*, Civ. No. 3:10-cv-663, 2017 WL 4228751, at *7 (S.D. Miss. Sept. 22, 2017).

Therefore, the argument that Plaintiff's attorneys failed to exercise billing judgment lacks merit.

### ii. Duplicative Hours

Next, Defendant contends that Plaintiff's billing statement includes duplicative entries, and that the Court should disallow all duplicative fees. Mem. [263] at 6-7. Defendant first appears to argue that the 100 hours Mr. Holder billed in this case are generally duplicative because this is "a single-issue § 1983 case that Mr. Smith was already intimately familiar with." *Id*. at 6. Defendant also argues that the 12.5 hours Mr. Holder spent reviewing the pleadings, records, and other documents to familiarize himself with the case upon entering an appearance are duplicative.[2] *Id*. at 6. Defendant further argues that two other entries by Mr. Holder are duplicative of entries by Mr. Smith, for (1) conducting legal research and work on Plaintiff's proposed jury instructions; and (2) conducting legal research to assist with Plaintiff's proposed jury instructions. *Id*. Those entries totaled 2.75 hours.

The Court begins with Defendant's first argument that the 100 hours billed by Mr. Holder in this case are generally duplicative because this is a simple single-issue case. This argument rings particularly hollow given its contradiction with Defendant's position in every other post-trial filing. For example, Defendant has continually asserted that this case presented a complex issue of first impression, Mem. [245] at 8, and unique facts for which no analogous cases exist, *id*. at 25. *See also* Mem. [267] at 1 (stating "this action presents a unique question of law that is

---

[2] Perry did not include this entry in the list of those hours that she alleges should be removed from the lodestar amount. *See* Mem. [263] at 11.

not fully answered by existing case law."). Likewise, Defendant's previous arguments undercut the current assertion that this is actually a "single-issue" case. For instance, Defendant raised numerous substantive sub-issues under Plaintiff's Eighth Amendment deliberate indifference claim. Mem. [245] at 5-20. Defendant also raised issues regarding the applicability of the *Ex parte Young* exception to sovereign immunity and the applicability of qualified immunity. *See* Mem. [245] at 5-20. Under each issue, Defendant persisted that this case presented some new and unique circumstances requiring extensive review of various Supreme Court and Fifth Circuit precedents.

Additionally, whereas here, "a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing." *Hoffman v. L & M Arts*, Civ. No. 3:1-cv-953, 2015 WL 3999171, at *5 (N.D. Tx. Jul. 1, 2015) (emphasis in original) (citing *La. Power & Light Co.*, 50 F.3d at 325 (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains."). Thus, the Court respectfully declines to undertake the role of a "green-eyeshade accountant[]."*Fox*, 563 U.S. at 838. Therefore, the Court finds these hours are not duplicative.

Defendant next argues that the 12.5 hours Mr. Holder spent familiarizing himself with the case are duplicative. Mem. [263] at 6. In the Court's view, these hours are neither unreasonable nor redundant. Defendant essentially argues that Mr. Holder should have tried this case without first familiarizing himself with it.

That would be an unreasonable standard. And doing so would also almost certainly violate at least one of the Mississippi Rules of Professional Conduct, which this district adopted under Local Uniform Civil Rule 83.5. For example, Mississippi Rule of Professional Conduct 1.1 which provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Miss. R. Prof'l Conduct 1.1. Therefore, the Court finds these hours are not duplicative.

Nor does the Court view the 2.75 hours Mr. Holder spent on Plaintiff's proposed jury instructions as unreasonably duplicative or redundant. Although duplication of effort is not per se unreasonable, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Walker*, 99 F.3d at 768. Here, the Court required both parties to submit a complete set of proposed jury instructions and to be prepared to discuss them at a pre-trial status conference. In the Court's experience having two attorneys split up the work to complete such a task in not unreasonable. Additionally, Defendant had at least two attorneys working on her own proposed jury instructions. If Defendant saw it necessary to use multiple attorneys, why should a different standard apply to Plaintiff? Moreover, according to Defendant, preparation of the jury instructions required the consideration of not only the delay in medical care claim, which she suggests is complex in and of itself, but also of the issues of qualified immunity and respondeat superior, which she contends are equally as complex. Therefore, the Court finds these hours are not duplicative.

Equally unpersuasive is Defendant's contention that the 18.7 combined hours Mr. Smith and Mr. Holder spent on the proposed jury instructions are excessive. Mem. [263] at 7. In her view, these hours are "especially" excessive "given that the model jury instructions were used at trial." *Id*. That is misleading. As already noted, the Court required both parties to submit a complete set of proposed jury instructions and come prepared to discuss them at a pre-trial in-chambers conference. As also noted, according to Defendant the preparation of such instructions required extensive research on multiple issues. Additionally, while the model instructions were used in many instances, substantive changes were made to others. As just one example, the Eighth Amendment delay in medical care instruction was altered, based on the research and arguments of the parties. Based on the Court's own experience 18.5 hours is not excessive to draft a complete set of proposed jury instructions. Therefore, the Court finds these hours are also not excessive.

Based on the foregoing, the Court finds that Plaintiff did not include duplicative or excessive hours in his billing statement. Accordingly, the Court will not reduce those hours.

### iii.   Inadequately Documented Hours

Defendant also contends that the Court should disallow the 44.5 hours billed by Mr. Smith and the 40.5 hours billed by Mr. Holder for trial preparation. Mem. [263] 7-8, 11-11. Defendant contends that these billing entries are too vague for the Court to determine whether they are reasonable. *Id*.

14

The Court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *La. Power & Light Co.*, 50 F.3d at 326. Trial courts in this Circuit have disallowed hours billed for vague time entries such as "trial preparation." *M.B. v. Rankin Cnty. Sch. Dist.*, Civ. No. 3:13-cv-241, 2016 WL 1077833, at *4 (S.D. Miss. Mar. 17, 2016) (court deducted hours billed related to trial preparation because the entries lacked specificity about the actual tasks performed); *Barrow v. Greenville Ind. Sch. Dist.*, Civ No. 3:00-cv-913, 2005 WL 6789456, at *11-*12 (N.D. Tex. Dec. 20, 2005). However, the Court is mindful that "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *LULAC v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). The attorney must merely provide "the date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough description of the services rendered," *id*, supplemented, if need be, by a sworn declaration. *Dunigan v. Miss. Valley State Univ.*, Civ. No. 4:19-cv-33, 2021 WL 4392132, at *3 (N.D. Miss. Sept. 24, 2021).

Here, the revised billing statement provides sufficient detail to permit the Court to determine whether the hours were necessarily and reasonably expended. For each formerly vague entry, the revised statement provides, the date of the services performed, the number of hours expended, and a short, but thorough, description of the specific trial preparation tasks undertaken. *See* Ex. [266-2] at 9-10, 14-15. For example, Mr. Smith's revised billing statement indicates that on December

11, 2021, he spent 8.0 hours preparing for trial, and provides the following description of the tasks undertaken "update outline of Client's direct examination; continue working on outline for opening statement; prepare PowerPoint presentation for use in opening statement; review exhibits for use in same; factual research re: artificial hip replacements and rheumatoid arthritis[.]" *Id.* at 10. Thus, the revised billing statement cures any vagueness issues. Therefore, the Court will not reduce the hours for vagueness or redundancy.

### iv.   Clerical Hours

Defendant further contends that Mr. Smith and Mr. Holder[3] improperly billed for clerical work. Mem. [263] at 8. As the Supreme Court has recognized "[p]urely clerical or secretarial tasks should not be billed at a paralegal rate," let alone an attorney rate, "regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). However, there exists no precise test for determining whether a specific task qualifies as legal or clerical. Instead, courts routinely provide non-exhaustive lists of tasks that qualify as clerical. *Compare Missouri,* 491 U.S. at 288 (approving a fee for work on legal tasks that were not as sophisticated as many but nonetheless legal in nature, including "factual investigation, . . . assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence" is appropriate), *with Walker,* 99 F.3d at 771 (holding that "responding to requests . . . for information, . . . gathering information, . . . interviewing class members,

---

[3] Defendant incorrectly identifies Mr. Holder as "Mr. Holden." Mem. [263] at 8.

investigating complaints, and developing a coherent picture" were clerical tasks). Therefore, the Court must use its judgment in making such a determination and "consider whether the work performed was 'legal work in the strict sense' or was merely clerical work that happened to be performed by a lawyer." *Abrams v. Baylor Coll. of Med.,* 805 F.2d 528, 536 (5th Cir. 1986)

Despite alleging that Mr. Holder billed hours for clerical work, Defendant does not identify any allegedly clerical hours. *See* Mem. [263] at 8, 11. On the other hand, Defendant cites numerous billing entries by Mr. Smith that involve allegedly clerical work. *Id.* at 10. These objections can be broken down into four distinct categories, which the Court addresses in turn.

Defendant first objects to the 8.0 hours Mr. Smith billed for reviewing Plaintiff's medical records as clerical. *Id.* at 10. Defendant cites no authority, and offers no explanation, to support this proposition. Nonetheless, the Court does not view these hours as clerical. The review of medical records in this case is markedly different than other cases in which courts in this district have classified such work as clerical. For example, in *Minter-Smith v. Mukasey*, the court disallowed time spent reviewing medical records for the purpose of determining which records had been sent to the opposing party and which remained outstanding. Civ. No. 3:02-cv-1057, 2008 WL 2164565, at *12 (S.D. Miss. May 22, 2008). Here, the review does not appear to share a similar clerical nature. The first billing entry is dated, February 8, 2019, *id*. at 10, shortly after Mr. Smith was appointed as counsel, Order [156](entered Jan. 14, 2019), and shortly before Plaintiff filed his amended complaint, Am. Compl. [162]

17

(filed Feb. 20, 2019). Based on this context, it appears that the review of Plaintiff's medical records was undertaken to gain familiarity with this case and draft an amended complaint. Such work, especially in a delay in medical care case, requires legal skill, knowledge, and judgment. Therefore, these hours will not be deducted as clerical.

Defendant next objects to the 3.6 hours Mr. Smith billed writing letters to his client as clerical. Mem. [263] at 10. This objection is somewhat perplexing given that one of the cases Defendant cites specifically provides that "[e]xamples of work that may be billed at an attorney's rate are . . . conferences, telephone calls, and *other correspondence.*" Mem. [263] at 8 (citing *Hardy v. City of Tupelo, Miss.*, Civ. No. 1:08-cv-28, 2010 WL 730314, at *7 (N.D. Miss. Feb. 25, 2010) (emphasis added). In response to this objection, Plaintiff explained that given his incarceration, the principal means for attorney-client communication were via telephone or letter. Mem. [266] at 8. He went on to explain that Mr. Smith's letters provided "detailed updates on [the] case, explanations of potential issues in the litigation and litigation strategies, and counsel's thoughts on the likelihood of success in various courses of action." *Id*. He also noted that other letter's prepared by staff, were excluded from the billing statement. *Id*. Because the letters were effectively a form attorney-client communication, and their substance the result of legal research and analysis that is generally performed by a lawyer, these hours are not clerical.

Defendant also objects to the 1.5 hours Mr. Smith billed for the preparation of different notices and waivers as clerical. Mem. [263] at 10. Defendant argues that the

18

Court should deduct these hours because the work is "typically performed by either a secretary or paralegal." *Id.* at 8. However, under Fifth Circuit precedent while secretarial work is not recoverable, paralegal work is recoverable in an attorney fees award if the work is legal in nature, rather than clerical. *Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir. 2001); *see also Johnson*, 488 F.2d at 717 (providing that it is the nature of the work, not the title or education of the person performing it, that determines whether it is legal, paralegal, or secretarial/clerical in nature). Therefore, these hours will not be deducted as clerical.

However, consistent with the practices in this district a lower hourly rate will apply. On this issue, the Court finds the *Hardy* case cited by Defendant persuasive. Mem. [263] at 8. In that case, the district court determined that that the "preparation of notices" should be billed at the paralegal rate. *Hardy*, 2010 WL 730314 at *7. Though the Court does not share the view that the $85.00 per hour paralegal rate applied by the *Hardy* court should apply here. In this district, courts have determined that paralegal rates between $110 and $130 per hour are reasonable. *Wiemer v. Rubino*, Civ. No. 1:16-cv-99, 2019 WL 2461817, at *3 (S.D. Miss. Jun. 12, 2019) (citing *Rigsby*, 2014 WL 691500, at *17); *Trout Point Lodge Ltd. v. Handshoe*, Civ. No. 1:12-cv-90, 2013 WL 6524650, at *6 (S.D. Miss. Dec. 11, 2013). Out of fairness the Court will split the difference and apply a per hour of $115.00 to the 1.5 hours Mr. Smith billed preparing notices and waivers.

Defendant also objects to the 0.50 hours Mr. Smith billed for meeting with courthouse technology personnel prior to trial as clerical. Defendant does not cite any

authority, or offer any explanation, to support the assertion that this work is clerical. For the trial to proceed in an orderly fashion, it was necessary for Mr. Smith's device to be compatible with the courtroom systems and for him to understand how those systems operated. Thus, in the Court's view this is not a task that could have been performed by someone else. It is also worth noting that the purpose of this task was to use that device for opening and closing arguments, and to examine witnesses, which only a lawyer may do. Therefore, that time will not be deducted as clerical.

### c. Travel Time

Also included within the lodestar is hours billed for attorney travel time. In this district, courts "typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time." *Depriest*, 2017 WL 4228751, at *7 (collecting cases). No objection has been made to the 19.5 hours Plaintiff requested on behalf of Mr. Smith for travel time. And Plaintiff has not asserted that any work was accomplished while Mr. Smith was traveling. Therefore, the Court finds a reasonably hourly rate for Mr. Smith's 19.5 hours of travel time to be 50% of his hourly rate, or $118.50.

### d. Reasonable Expenses

Finally, a court calculating the lodestar must take reasonable expenses into account. *Depriest*, 2017 WL 4228751, at *8 (citing *Missouri*, 491 U.S. at 285 (providing that reasonable attorney fees "must also take account of other expenses . . . .")). Here, the Court finds all expenses related to lodging, travel, and postage, to be reasonable.

*See* Ex. [266-2] at 15. And no substantive objection has been made to them. Therefore,

the lodestar will include a total of $898.10 for expenses.

C.    Lodestar Calculation

Based on the inputs provided above, Plaintiff's attorneys are entitled to the

following:

| Category | Hours | Rate | Total |
|---|---|---|---|
| Christopher Smith | 306.0 | $237.00 | $72,522.00 |
| Paralegal Type Work | 1.5 | $115.0 | $172.50 |
| Travel Time | 19.5 | $118.50 | $2,310.75 |
| G. Morgan Holder | 100.1 | $237.00 | $23,723.70 |
| Expenses | | | $898.10 |
| Lodestar | | | $99,627.05 |

D.    Lodestar Adjustment – *Johnson* Factors

After calculating the lodestar, the court must consider whether an upward or

downward adjustment to the amount of attorney's fees is warranted based on the

*Johnson* factors. *Strong v. Bellsouth Telecomm., Inc.*, 137 F.3d 844, 850 (5th Cir.

1998). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions involved; (3) the skill required to perform the legal service
> properly; (4) the preclusion of other employment by the attorney due to
> the acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) the time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> undesirability of the case; (11) the nature and the length of the
> professional relationship with the client; and (12) awards in similar
> cases.

*Johnson*, 488 F.2d at 717-19.

However, subsequent decisions have imposed some limitations on which factors courts may consider in awarding a variance. For example, in *Shipes v. Trinity Industries,* the Fifth Circuit held that "[f]our of the *Johnson* factors the novelty and complexity of the issues [factor 2], the special skill and experience of counsel [3], the quality of representation [9], and the results obtained from the litigation [8] are presumably fully reflected in the lodestar amount." 987 F.2d 311, 320-21 (5th Cir. 1993) (holding that upward adjustments for these factors would be "proper only in certain rare and exceptional cases."). The *Shipes* court also found that "time limitations [7]" were "accounted for in the lodestar amount," and that "preclusion of other employment [4] . . . will ordinarily be subsumed within the lodestar amount." *Id.* at 321-22.

In the Court's view, the lodestar calculation has adequately subsumed these and other factors. For example, of the remaining factors, the Court specifically addressed the first, fifth, eleventh, and twelfth factors in calculating the lodestar calculation. *See* discussion *infra* Section III.B. The sixth factor – whether the fee is fixed or contingent – is not relevant in this case. Leaving only the tenth factor – the "undesirability" of the case. However, following *Perdue*, that factor is moderately linked to the "performance" factor. In that case, the Court concluded that only in "rare and exceptional" circumstances might an attorney's performance justify an enhancement, but that it would "require specific evidence that the lodestar fee would not have been adequate to attract competent counsel . . . ." *Perdue,* 559 U.S. at

22

553 (citation and internal quotation marks omitted). Because there is no evidence that the lodestar fee of $237.00 per hour is inadequate to attract competent counsel, the Court cannot consider an upward adjustment based on that factor.

In sum, the Court has carefully considered Plaintiff's arguments in support of an upward variance. While many of the arguments are compelling, they were already considered in the lodestar calculation. Because the majority of the factors were subsumed into the lodestar calculation, the Court declines to award an upward variance.

E.   PLRA Limitations

Because this case arises under the PLRA, the Court must also consider the four additional limitations imposed by that Act on the award of attorney fees. 42 U.S.C. § 1997e(d). First, the PLRA requires that awarded fees have been "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1)(A). Here, the entirety of Plaintiff's attorneys work either directly led to (1) the jury's determination that Defendant violated Plaintiff's Eighth Amendment rights or (2) the Court's granting of prospective injunctive relief to remedy that current and ongoing Eighth Amendment violation. Accordingly, the lodestar award satisfies this requirement.

Second, the PLRA requires that awards must be either "proportionally related to the court ordered relief" or "directly and reasonably incurred in enforcing the relief ordered." 42 U.S.C. § 1997e(d)(1)(B). Here, both provisions apply. A portion of the fees were "proportionally related" to the relief ordered. For example, to obtain prospective

injunctive relief Plaintiff had to first prove the elements of his Eighth Amendment claim. The remainder of the fees were "directly and reasonably incurred" in enforcing that relief by encompassing work undertaken to effectuate the entry of prospective injunctive relief and defend the granting of that relief. Accordingly, the lodestar satisfies this requirement as well.

Next, the PLRA caps the hourly rates for court-appointed counsel at 150 percent of the rate established by the CJA. 42 U.S.C. § 1997e(d)(3). The current maximum hourly rate for appointed counsel in non-capital cases in $158.00. *See* Guide to Judiciary Policy, Vol. VII, § 230.16(a), https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses. Therefore, the PLRA caps the hourly rate at $237.00

In *Perdue*, the Supreme Court noted that "[a]n attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all." 559 U.S. at 556. As the Court explained, "[c]ompensation for this delay is generally made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Id* (quoting *Missouri*, 491 U.S. at 282). Therefore, the Court will use the current CJA rate of $237.00 for all hours billed, rather than applying different rates based on the date each hour was billed.

Finally, the PLRA provides that "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the

24

judgment, the excess shall be paid by the defendant." § 1997e(d)(2). The Supreme Court has recently interpreted this provision to require trial courts to "apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees" *Murphy v. Smith*, — U.S. —, 138 S. Ct. 784, 790 , 200 L.Ed.2d 75 (2018). Here, the jury awarded compensatory damages of $382,000.00. Final J. [241] at 1. Thus, $95,500.00 ($382,000.00 * 0.25)  of that judgment must be applied towards the attorney fees award. Accordingly, Defendant is responsible for paying the difference of  $4,127.05.

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [127] for Attorney's Fees and Nontaxable Expenses, filed by Plaintiff Thad Everett Delaughter is **GRANTED IN PART AND DENIED IN PART.** Pursuant to 42 U.S.C. § 1988(b), Plaintiff is entitled to reasonable attorney fees in the amount of $98,728.95 and expenses in the amount of $898.10, for a total award of $99,627.05.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, pursuant to 42 U.S.C. § 1997e(d)(2), that $95,500.00 of those fees shall be paid from the compensatory damages award. Defendant Gloria Perry is ordered to pay Plaintiff the remaining $4,127.05.

**SO ORDERED AND ADJUDGED**, this the 6th day of July 2022.

*s/ Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE